1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   MARTHA BOERSCH (CABN 126569)
3  Chief, Criminal Division

4  IVANA DJAK (NYBN 5516687)
   Assistant United States Attorney
5
       1301 Clay Street, Suite 340S
6      Oakland, California 94612
       Telephone: (510) 637-3918
7      FAX: (510) 637-3724
       ivana.djak@usdoj.gov
8
   Attorneys for United States of America
9
                    UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13  UNITED STATES OF AMERICA,            )   **CASE NO. 23-CR-355 SI**
                                         )
14          Plaintiff,                   )   **UNITED STATES' SENTENCING**
                                         )   **MEMORANDUM**
15     v.                                )
                                         )
16  JORGE RODAS SALGUERO,                )   Court:        Hon. Susan Illston
                                         )   Hearing Date: January 17, 2025
17          Defendant.                   )   Hearing Time: 11:00 A.M.
                                         )
18

19  **I.    INTRODUCTION**

20          The Defendant, Jorge Rodas Salguero, is a professional drug dealer who has repeatedly been

21  removed from the United States, illegally re-entered, and dealt deadly drugs like fentanyl to the people of

22  San Francisco.   On September 27, 2023, the Defendant was observed dealing drugs in the Tenderloin

23  District.   Upon his arrest, he was found to have 205.2 grams of fentanyl, 33.628 grams of heroin, and 37.9

24  grams of methamphetamine.   He has plead guilty to one count of Possession with Intent to Distribute

25  Fentanyl and one count of Possession with Intent to Distribute Methamphetamine.

26          The Defendant has a long criminal history, including four federal convictions for illegal re-entry,

27  and several state convictions for drug trafficking.   Between his convictions, prison terms, and removals,

28  the Defendant has repeatedly been arrested.   The Defendant has been a professional drug trafficker for at

                                               1
23-CR-355 SI

least fifteen years and has repeatedly illegally entered the United States to deal drugs. The Defendant's criminal behavior occurred while he was either on state probation or federal supervised release.

The Defendant has never been amenable to supervision and the community has been in peril during periods when he has not been in custody. When he is not in custody, he is out on the streets of San Francisco dealing deadly drugs. Because his prior convictions have failed to deter additional criminal conduct, a substantial custodial sentence is necessary to hold the Defendant accountable and protect the community. Continued supervision is necessary to ensure that after the Defendant is released, he is accountable to the U.S. Probation Office. Therefore, the government recommends a sentence of 144 months' incarceration followed by three years of supervised release.

## II.    BACKGROUND

### A.    The Defendant Deals Deadly Substances in the Tenderloin

On September 27, 2023, agents with the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA") observed the Defendant near the intersection of 7th and Mission Streets conducting numerous hand-to-hand drug sales over the course of one hour. *See* Dkt. No. 60 Presentence Report ("PSR") ¶ 7. The Defendant was also observed engaging in counter-surveillance tactics, such as pacing up and down the same street over a period of time, and frequently looking around as if on the lookout for police or rival drug dealers. *Id.* The Defendant was ultimately arrested, and a search of his person and bags he was carrying, revealed large distribution quantities of fentanyl, methamphetamine, and heroin. A DEA lab report confirmed a net weight of 205.2 grams of fentanyl, 33.628 grams of heroin, 10 grams of methamphetamine at 97% purity and 27.9 grams of methamphetamine at 98% purity. *Id.* Upon arrest, the Defendant made a veiled threat at an agent, stating, "people like me always get out." *See* PSR ¶ 8.

The Defendant was arrested dealing drugs, including fentanyl, in the Tenderloin in September 2023, at the height of a record-breaking summer in San Francisco in terms of overdose deaths. There were approximately 810 accidental overdose deaths in 2023—a morbid record—with 79 overdose deaths occurring in July, and 88 in August. *See* Dkt. No. 32 (Decl. of Ivana Djak ("Djak Decl.") Ex. A, at ¶ 7 (Decl. of Braden Lyons ("Lyons Decl.")). In September 2023, the 7th and Mission/Market Street corridor, where the Defendant was dealing, was particularly active with drug trafficking. *Id*. at ¶ 7; Dkt.

23-CR-355 SI

No. 32 (Djak Decl. Ex. B, at ¶ 3 (Decl. of Christopher Quiroz ("Quiroz Decl.")).  Federal Protective Services, the agency that provides security for the two federal buildings located in the Tenderloin, increased their patrol at the intersection of 7th and Mission Streets in response to a surge in fentanyl dealing and violent crime.  Quiroz Decl. at ¶ 5.  Workers at one of the federal buildings were advised to telework due to the safety concerns arising from the sale and use of fentanyl around the site.  *Id.*

### B.    The Defendant's Long Criminal History of Drug Trafficking and Illegal Re-Entry

The Defendant has a long criminal history, including four federal convictions for illegal re-entry, and several state convictions for drug trafficking.  The Defendant has been a professional drug trafficker for at least fifteen years and has repeatedly illegally entered the United States to deal drugs.

In April 2009, the Defendant was convicted in San Francisco County Superior Court of transporting or selling narcotics and sentenced to 39 days in prison and three years of probation.  *See* PSR ¶ 25.  This conviction involved the Defendant selling cocaine base to an undercover officer.  *Id.*

In December 2009, the Defendant was convicted in San Francisco County Superior Court of solicitation—specifically, he attempted to sell cocaine base to an undercover officer.  *See* PSR ¶ 26.  He was sentenced to 93 days in prison.  *Id.*

In April 2011, the Defendant was again convicted in San Francisco County Superior Court of transporting or selling narcotics and sentenced to six months in prison and three years of probation.  *See* PSR ¶ 27.  This conviction also involved the Defendant selling cocaine base to an undercover officer. *Id.*

In July 2011, the Defendant was removed from the United States to Honduras but was found in San Francisco again in January 2012.  *See* PSR ¶ 28.

In April 2012, the Defendant was convicted of illegally re-entry in violation of 18 U.S.C. § 1326 in this District, and sentenced to 24 months in prison, and three years of supervised release.  *See* PSR ¶ 28.  The Defendant's supervision was transferred to the District of Utah.  *Id.*

The Defendant was removed from the United States in October 2013, but was found in Utah again in August 2014.  *See* PSR ¶ 29.

In March 2015, the Defendant was again convicted of illegally re-entry in violation of 18 U.S.C. § 1326 in the District of Utah, and sentenced to 24 months in prison, and three years of supervised release.  *See* PSR ¶ 29.

23-CR-355 SI

1    The Defendant was again removed from the United States in June 2016, and was found in the

2    District of Utah in March 2017.  *See* PSR ¶ 30.

3    In August 2017, the Defendant was again convicted of illegally re-entry in violation of 18 U.S.C.

4    § 1326 in the District of Utah, and sentenced to 27 months in prison, and three years of supervised

5    release.  *See* PSR ¶ 30.

6    After serving his sentence in Utah, the Defendant left the United States, was denied reentry in

7    Texas in March 2020, but then was again found in the United States in August 2020.  *See* PSR ¶ 31.

8    In March 2021, the Defendant was again convicted of illegally re-entry in violation of 18 U.S.C.

9    § 1326 in the District of Arizona, and sentenced to 30 months in prison, and three years of supervised

10   release.  *See* PSR ¶ 31.  The Defendant was on supervised release in the District of Arizona when he was

11   arrested in this case.  *Id*.

12   Between his convictions and terms of incarceration, the Defendant has been arrested multiple

13   times, including for evading law enforcement officers, drunk driving, and smuggling controlled

14   substances into jail.  *See* PSR ¶¶ 35–40.  His evasive behavior included swallowing suspected bags of

15   heroin.  *See* PSR ¶ 35.

16   ### III.   PROCEDURAL HISTORY

17   On September 28, 2023, the Defendant was charged by Complaint, Dkt. No. 1, and on October

18   11, 2023, he was indicted on one count of Possession with Intent to Distribute Fentanyl (Count One) in

19   violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of Possession with Intent to Distribute

20   Methamphetamine (Count Two) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Dkt. No. 12.  On

21   October 13, 2023, the Magistrate Judge ordered the Defendant detained.  Dkt. No. 11.

22   On March 29, 2024, the Defendant moved to suppress the evidence seized from his person and

23   bags on September 27, 2023.  Dkt. No. 31.  On May 10, 2024, the Court held a suppression hearing, and

24   denied the Defendant's Motion.  Dkt. No. 35.

25   On August 16, 2024, jurisdiction over the Defendant's supervised release was transferred from

26   the District of Arizona to this District.  *See* Case No. 24-CR-464 MMC, Dkt. No. 1.  A Form 12 Petition

27   for Revocation that was filed against the Defendant in the District of Arizona on August 9, 2024, was

28   also transferred.  *See* Case No. 24-CR-464 MMC, Dkt. Nos. 2.  The basis of the Form 12 was primarily

4

the September 27, 2023 conduct charged in the instant case, along with a September 18, 2023 drunk driving arrest and the related smuggling of drugs into jail. *Id*. The Defendant was arraigned on the Form 12 in this District on August 16, 2024. *See* Case No. 24-CR-464 MMC, Dkt. Nos. 3.

On September 9, 2024, the instant case and the Form 12 case were related. *See* Case No. 23-CR-355 SI, Dkt. No. 57; Case No. 24-CR-464 MMC, Dkt. No. 10.

On October 11, 2024, the Defendant entered an open plea of guilty to both counts in the Indictment and admitted to the related Form 12 violations. *See* Case No. 23-CR-355 SI, Dkt. Nos. 58, 59; Case No. 24-CR-464 MMC, Dkt. No. 11.

Sentencing on both the Indictment and Form 12 is set for January 17, 2025 at 11:00 a.m.

## IV.    SENTENCING GUIDELINES CALCULATION

The government agrees with Probation's guideline calculations. The calculation is as follows:

a. Possession with Intent to Distribute (base offense level 30 (U.S.S.G. § 2D1.1(c)(5)).
There are no specific offense characteristics. PSR ¶ 14.

A two-level deduction for Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1, results in an Adjusted Offense Level of 28. PSR ¶ 14. An additional point deduction is not appropriate because the government engaged in extensive briefing in response to the Defendant's motion to suppress. The Defendant's intention to plead guilty did not become clear for months thereafter, during which time the government continued to expend resources prosecuting this case.

Accordingly, the final Adjusted Offense Level is 28. The Defendant's criminal convictions result in a criminal history category of VI. PSR ¶ 34. This results in a guideline range of 140 to 175. PSR ¶ 61.

## V.    APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

23-CR-355 SI

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)    the need for the sentence to protect the public from future crimes of the defendant;

(5)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6)    the need to provide restitution to any victims of the offense.

## VI.    RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 144 months to be followed by a three-year term of supervised release, which represents a sentence at the low end of the guideline range, but is the most significant sentence the Defendant will have received to date, and reflects the gravity of his conduct in this case and his unabated recidivism.

The nature and circumstances of the Defendant's offense are serious. Law enforcement observed the Defendant dealing drugs in the Tenderloin District of San Francisco in September 2023, at the height of a fentanyl overdose epidemic in this city. Upon his arrest, he was found to have large quantities of deadly drugs: 205.2 grams of fentanyl, 33.628 grams of heroin, and 37.9 grams of methamphetamine. And he was found dealing drugs in the Tenderloin after having been repeatedly removed from the United States.

The present case is the Defendant's fifth federal conviction. He has been convicted of illegal re-entry on four separate occasions and has been in federal custody or on federal supervision since 2012. Despite repeated removals from the United States, he illegally re-enters after each deportation. The Defendant also has several state drug trafficking convictions dating back to 2009. In other words, the

6

23-CR-355 SI

1   Defendant has been dealing drugs in San Francisco for over 15 years.  Between his various convictions,

2   he has been repeatedly arrested.  The Defendant has demonstrated that, when he is out of custody, he

3   will find a way to illegally re-enter the United States, come to San Francisco, and resume his drug

4   trafficking business.  The only thing that can protect the community is a lengthy prison sentence.

5       The Defendant has previously been sentenced to federal prison terms of 24 months, 24 months,

6   27 months, and 30 months, and his federal supervised release has also repeatedly been revoked.  But the

7   Defendant has been undeterred—he continues to illegally re-enter and to deal drugs.  A substantial term

8   of incarceration is required to keep the community safe and to deter the Defendant from engaging in

9   further criminal conduct—his shorter sentences have not protected the community or deterred him.

10      Accordingly, the government recommends a term of incarceration of 144 months, representing

11  the longest term the Defendant will have served—but also representing a sentence at the low end of the

12  guideline range in this case.  Probation recommends a significant downward variance to 96 months

13  because the Defendant grew up in a volatile home and in poverty in Honduras, and because his offenses

14  are "nonviolent."  *See* PSR, Sentencing Recommendation.  The government is sympathetic to the

15  difficulty of growing up in poverty in Honduras—but Probation discounts the significant damage and

16  chaos drug traffickers like the Defendant have wrought on San Francisco.  And the Defendant is not just

17  any drug trafficker—he is a drug trafficker the United States government has removed repeatedly.  All

18  attempts to protect the community from the Defendant's drug trafficking and to remove him from this

19  country have failed—he is undeterred.  That the Defendant grew up in poverty is not an excuse for a 15-

20  year criminal rampage.  A lengthy prison sentence is necessary.

21      The government's recommendation of a custodial sentence of 144 months imprisonment takes all

22  the above factors into account.  A lengthy sentence is necessary to protect the public from an individual

23  who has thus far made a lifestyle of flouting the law.  A 144-month sentence followed by three years of

24  supervised release is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C.

25  § 3553.

26      The government also recommends that any term of imprisonment imposed on the supervised

27  release violations run consecutively to the sentence imposed in the instant case, to reflect the separate and

28  severe nature of the Defendant's long history of continuous unabated violations of supervised release

7

1  conditions and Court orders.

2      The government also requests that the Court impose the following suspicionless search

3  condition:

4      The defendant shall submit his person, residence, office, vehicle, electronic devices and
       their data (including cell phones, computers, and electronic storage media), and any
5      property under defendant's control to a search. Such a search shall be conducted by a
       United States Probation Officer or any federal, state, or local law enforcement officer at
6      any time, with or without suspicion. Failure to submit to such a search may be grounds for
       revocation; the defendant shall warn any residents that the premises may be subject to
7      searches

8      This search condition is warranted given the Defendant's significant criminal history, numerous

9  violations of criminal supervision, and the risk that he will reoffend. It is necessary to deter the

10 Defendant's criminal conduct, allow detection of any criminal conduct he engages in, and to encourage

11 his rehabilitation. *See United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017). Further, given

12 the ubiquity of smartphones and electronic devices in today's world, if the Defendant chooses to rearm

13 himself with a firearm, he likely will use an electronic device in furtherance of such criminal conduct.

14 Thus, the search condition should also apply to electronic devices.

15

16 DATED: January 10, 2025                          Respectfully submitted,

17

18                                                  United States Attorney

19

20                                                  _____/S/_____
                                                    IVANA DJAK
21                                                  Assistant United States Attorney

22

23

24

25

26

27

28

23-CR-355 SI